UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOESPH A. WORLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | 1:10-cv-01259-SEB-DKL |
| R. SCOTT WADDELL, in his official ) | |
| capacity as Commissioner of the Indiana ) | |
| Bureau of Motor Vehicles, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER**

Pursuant to 42 U.S.C. § 1983, Plaintiff has filed this lawsuit for declaratory and injunctive relief as a result of the refusal by Defendant, the Indiana Bureau of Motor Vehicles ("the BMV"), to issue Plaintiff a photo identification card[1] in the name under which he currently lives: Joesph A. Worley. Plaintiff contends that the BMV's unwillingness to issue him an Indiana photo identification card violates the Fourteenth Amendment to the United States Constitution. He specifically invokes the Due Process Clause of this amendment, which forbids "any State [from] depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1.

**I. Background**

Plaintiff was born to an unwed mother in 1968. Second Am. Compl. ¶ 7. The

---

[1] It is within the proper scope of the BMV's duties to issue such cards and driver's licenses. Second Am. Compl. ¶ 6.

birth certificate issued at that time identified him by the name "Joseph Alan Ivey." *Id.* ¶ 7; *see* Pl.'s Mot. for S.J. Ex. B (copy of birth certificate). One year later, after his mother married his biological father, Plaintiff was issued a Social Security card designating him as "Joesph A. Worley." *Id.* ¶ 8. From that date onward, Plaintiff has used the name "Joesph A. Worley" in going about his personal life and conducting his business affairs. *Id.*; *see* Pl.'s Compl. Ex. A (copy of Social Security statement addressed to "Joesph A. Worley"). He considers "Joesph A. Worley" to be his "full legal name" as contemplated by the Indiana Administrative Code. *See* 140 Ind. Admin. Code 7-1.1-1(t) (defining "full legal name" as an individual's first name, middle name or names, and last name). Second Am. Compl. ¶ 8.

In 2007, Plaintiff was convicted of a felony drunk driving charge in Indiana and served six months of a two-year sentence in the state's New Castle Correctional Facility. Second Am. Compl. ¶ 9; Def.'s Br. at 2. He was released from prison on February 15, 2008, at which time the Indiana Department of Correction ("IDOC") issued him a "release card" with his photo, name (listed as "Worley, Joseph"), offender number, Social Security number, and date of release. *Id.*; Pl.'s Mot. Ex. C. His goals for reentry into society included voting in elections, obtaining a marriage license and driver's license, and adopting his youngest natural child.[5] Second Am. Compl. ¶ 10; Worley Dep. at 16. In pursuit of these objectives, he made "five or six" attempts to procure a photo identification

---

[5]Plaintiff fathered this child out of wedlock; she was adopted by her biological mother's husband in 2004 after Plaintiff's parental rights were terminated. Worley Dep. at 23.

card from the BMV between February 2008 and June 2011.  Pl.'s Br. at 4; Worley Dep. at 16.  Each of these endeavors was unsuccessful.  Worley Dep. at 16-17.

Based on the record before us, we surmise that Plaintiff may have expected some degree of resistance from the BMV.  His history with that agency is, to put it mildly, disconcerting.  By his own admission, "somewhere" between 1992 and 1994, his driver's license was suspended for six months after he was caught "[d]riving under the influence." Worley Dep. at 10.  Plaintiff's license was subsequently reinstated, but after "[a]nother DWI" in 1996, it was suspended once again, this time for a year.  *Id.* at 11; Def.'s Br. at 2.  Between 1996 and June 2011, Plaintiff went without a driver's license; he chose not to seek reinstatement between 1996 and 2008 due to the associated fines and costs.  Def.'s Br. at 2; Worley Dep. at 11.  He did, however, apply to the BMV for a new photo identification card at some point either during or after February 2008.  Pl.'s Br. at 4.  When he did so, he was refused despite having presented a Social Security statement, his birth certificate, his IDOC release card and parole travel permit, and two bills containing his current address.  Second Am. Compl. ¶ 11.  Plaintiff asserts that "[he] needed to have everything match on [his] birth certificate and Social Security [card]," Worley Dep. at 16-17, and that "the BMV refused to issue [him] a photo identification card because the name on his birth certificate did not match the name on file with the Social Security Administration." Pl.'s Br. at 4.  He further alleges that, notwithstanding this discrepancy, he "had not . . . had any difficulty in obtaining a state-issued photographic identification card or driver's license" before his incarceration.  Worley Aff. ¶ 2.

3

In June 2011, Plaintiff attempted to procure a driver's license from the BMV's Muncie location. Pl.'s Br. at 5. At some point prior to that day, the BMV had issued him a photo identification card. Worley Dep. at 29. Plaintiff understood the remainder of the process as follows:[6] he would be eligible to receive a license if he could verify his current address and pass a facial recognition program. He satisfied these criteria and subsequently went to the Muncie branch, where he passed a driver's test and had his photo taken. Pl.'s Br. at 5. Approximately seven days later, his driver's license arrived in the mail. However, Plaintiff's BMV woes resumed about a week after he received the driver's license, when his attorney received a letter directing Plaintiff to return the license. *Id.*; Pl.'s Ex. E ("BMV Ltr. 1"). This letter, dated June 22, 2011, was from the BMV's general counsel and stated, in pertinent part, as follows:

> It has recently come to the attention of the [BMV] that you were improperly issued an Indiana identification card by the BMV. Our records indicate that you applied for, and received, an identification card without providing the BMV with appropriate supporting documentation as outlined in I.C. 9-24-16 and 140 IAC 7-1.1-3.
> . . .
> [B]ased on the error made in issuing you an Indiana identification card without appropriate supporting documentation, the Commissioner has determined that the Indiana identification card issued to you must be revoked. . . . This revocation will remain in effect until you provide appropriate documentation as outlined in I.C. 9-24-16 and 140 IAC 7-1.1-3 to verify your identity.

BMV Ltr. 1. The letter also directed Plaintiff to return his Indiana photo identification

---

[6]Plaintiff contends that the manager of the Muncie BMV contacted the BMV's call center before relaying the following information to him about getting a photo identification card and driver's license: "[A]fter I passed the test, if the picture [from the facial recognition test] got sent in, if I received it in the mail, that meant that I passed the photo recognition and I would be issued my driver's license." Worley Dep. at 27.

4

card either in person or by mail. *Id.*

As established above, Plaintiff understood that having different names listed on his birth certificate and Social Security card hindered his efforts with the BMV. He wanted to change the name on his birth certificate[7] to remove this obstacle and, to that end, contacted attorney David Wilson to assist his efforts. Pl.'s Br. at 4; Worley Dep. at 17. Plaintiff, although unsure of whether Mr. Wilson filed the appropriate name change paperwork, asserts that the attorney told him that "the state wasn't going to touch [his name change] because of [his] felony conviction." Worley Dep. at 17. Since contacting Mr. Wilson, Plaintiff has not spoken with any other attorneys about effecting a legal name change. *Id.* at 18.

On September 30, 2010, Plaintiff personally filled out a Petition for Name Change, which he intended to file with the Delaware County Court. Worley Dep. at 18. He ultimately elected not to file the petition because of the associated filing fee. *Id.* at 19. Plaintiff also knew that his criminal history imposed additional impediments in this process. Notably, because he had been convicted of a felony in the ten years prior to September 30, 2010, petitioning for a name change would have required him to publish notice thereof in a Delaware County newspaper and with other entities specified by statute.[8] Second Am. Compl. ¶ 12; Worley Dep. at 19, 33; Pl.'s Br. at 4. Once again, in

---

[7] Plaintiff avers that he sought to change his name "legally changed from Joesph A. Worley to Joesph A. Ivey solely as part of [his] desire to again be issued a photographic identification card by the [BMV]." Worley Aff. ¶ 4.

[8] Indiana law requires an applicant for a name change to provide notice of his petition "[b]y

5

Plaintiff's view, these costs were prohibitive "due to the fact that he [was and] is jobless and indigent."   Second Am. Compl. ¶ 12.

## II.  Discussion

The Due Process Clause of the Fourteenth Amendment to the Constitution protects more than fair process; it "provides heightened protection against government interference with certain fundamental rights and liberty interests."  *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).   Beyond the freedoms detailed in the Bill of Rights, these interests are several:   "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion."   *Id.* (internal citations omitted).   Even so, the Supreme Court exercises great caution before expanding the concept of substantive due process past its existing boundaries.   The Court has explained its reticence to make substantive due process a free-for-all as follows:

> By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action.   We must therefore "exercise the utmost care whenever we are asked to break new ground in this field," lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the Members of this Court.

---

three (3) weekly publications in a newspaper of general circulation published in the county in which the petition is filed in court."   Ind. Code § 34-28-2-3(a)(1).   "[I]n the case of a person who has had a felony conviction within ten (10) years before filing a petition for a change of name, at least thirty (30) days before the hearing the petitioner must give notice of the filing of the petition to: (1) the sheriff of the county in which the petitioner resides; (2) the prosecuting attorney of the county in which the petitioner resides; and (3) the Indiana central repository for criminal history information."   *Id.* § 34-28-2-3(c).

*Id.* (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). After a fundamental right or liberty interest is properly asserted, the court examines the "directness and substantiality" of the government's interference with that right or interest. *Zablocki v. Redhail*, 434 U.S. 374, 387 n.12 (1978). A significant interference with a fundamental right is only defensible if it is "supported by sufficiently important state interests and is closely tailored to effectuate only those interests." *Id.* at 388.

In order for Plaintiff's claim to fall within the ambit of the protections provided by the Fourteenth Amendment's Due Process Clause, Plaintiff must demonstrate his "legitimate entitlement" to a "property" interest. *Bd. of Regents State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Property interests do not emanate from the Constitution, but are created. "[T]heir dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . [and which] secure certain benefits and that support claims of entitlement to those benefits." *Id.* Moreover, having a legitimate property interest in such a benefit "means [having] an entitlement established by rule; hope for a favorable exercise of administrative discretion does not qualify." *Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011). The Seventh Circuit has elaborated on the concept of property interests in kind, noting, "[W]e must look behind labels and decide whether [an asserted interest] is 'property' in a functional sense." *Reed v. Vill. of Shorewood*, 704 F.2d 943, 948 (7th Cir. 1983). Using this lens, the court determined that, "viewed functionally, property is what is securely and durably yours under state (or . . . federal) law, as distinct from what you hold subject to so many conditions as to make your

7

interest meager, transitory, or uncertain." *Id.*

Recently, the Seventh Circuit held that "a legitimate claim of entitlement to warrant a due process hearing occurs 'only when the statutes or regulations in question establish a framework of factual conditions delimiting entitlements which are capable of being explored at a due process hearing.'" *Fincher v. S. Bend Heritage Found.*, 606 F.3d 331, 334 (7th Cir. 2010) (quoting *Eidson v. Pierce*, 745 F.2d 453, 459-60 (7th Cir. 1984)). This lawsuit presents precisely the situation contemplated in *Fincher*. It is clear that the ability to identify oneself is critical for any United States citizen. We noted as much in our May 2011 Order Denying Defendant's Motion to Dismiss, when we concluded that "Plaintiff does not claim a fundamental right to identification . . . but rather a fundamental right to these other privileges . . . of which he is being deprived based on his lack of BMV-issued identification." *Worley v. Waddell*, 819 F. Supp. 2d 826, 830 (S.D. Ind. 2011). We concluded that his claim was intended to redress Defendant's conduct, which has effectively impeded his ability to vote, marry, or adopt his natural child. *Id.* The importance of these basic, community-oriented functions cannot be overstated. Thus, we conclude that Mr. Worley's argument that he has "a reasonable expectation [to] be issued a photographic identification card so that he can participate in our democracy on equal terms with other qualified citizens" has teeth. In our view, the doctrine of implied contract supports his contention that such a card is a protected "property" interest triggering his right to a Fourteenth Amendment due process hearing.

The concept of procedural due process is both malleable and variable. *See*

*Zinermon v. Burch*, 494 U.S. 113, 127 (1990); *Doherty v. City of Chi.*, 75 F.3d 318, 323 (7th Cir. 1996). To that end, Supreme Court jurisprudence instructs that "an opportunity for 'some kind of hearing'" ought to precede deprivation of a significant property interest. *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264 (1981); *Parratt v. Taylor*, 451 U.S. 527, 540 (1981), *overruled on other grounds*. The longstanding requirement for such hearings is that they occur "at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (citation omitted). A plaintiff who brings a Fourteenth Amendment procedural due process claim must, at the very least, be afforded "an opportunity to present his side of the story." *Wozniak v. Conry*, 236 F.3d 888, 890 (7th Cir. 2001). Nevertheless, "even for the most important decisions, an evidentiary hearing is required only if there are material factual disputes." *Id.*

"When a procedural due process claim is based on the random and unauthorized conduct of a state actor and state law remedies are available, a plaintiff must either avail himself of the state law remedy or show that the available remedy is inadequate." *Leavell v. Ill. Dep't of Natural Res.*, 600 F.3d 798, 802 (7th Cir. 2010). Our review of the record indicates that Mr. Worley cannot avail himself of the appropriate state law remedy, which is completion of the name change process detailed in the Indiana Code. In making this determination, the Court takes judicial notice of *In re Name Change of Herron*, No. 49A02-1205-MI-00364 (Marion Cir. Ct. Apr. 10, 2012), and *In re Name Change of Resnover*, No. 49-C01-1110-MI-040823 (Marion Cir. Ct. Apr. 4, 2012). Both of these cases involved a similar situation to the case at bar. Specifically, the plaintiff in each case

9

could not obtain a valid Indiana driver's license due to discrepancies between the names listed on his Social Security card and birth certificate. Despite the fact that appeals have been filed in these cases and reportedly still pend, both decisions read section 34-28-1-1 *et seq.* of the Indiana Code in conjunction with section 34-28-2-1 of the same to bar the plaintiff's otherwise legitimate petition for a name change. With no markedly different facts in the instant lawsuit, we cannot conclude that Mr. Worley would be more fortuitous in pursuing the same end. The prescribed state law remedy, although generally acceptable, fails to afford Mr. Worley full protection for important interests. For this reason, a hearing is necessary.

We recognize that the BMV's stated interest underlying these regulations is preventing voter fraud; as such, it is a strong and legitimate concern which we in no way wish to diminish. However, this interest, in our view provides further justification for a Fourteenth Amendment due process hearing. The exigency of holding such a hearing is, of course, obvious, given the upcoming November elections. Accordingly, the BMV is hereby ordered to conduct forthwith an evidentiary hearing during which Mr. Worley shall set forth the reasons he believes he should be granted a photo identification card. At the same time, the BMV will be permitted to conduct its own review of whether or not Mr. Worley's conduct is fraudulent or otherwise improper. The hearing and the decision by the BMV must occur with all due haste and, in any event, prior to the November 6th elections. All other facets of this lawsuit are stayed pending the outcome of this hearing. If Plaintiff is determined to be eligible to receive the state-issued identification card he

seeks, the Court's delay in issuing this order to a time after the October 9th voter registration deadline shall not foreclose Plaintiff's ability to vote in the upcoming November elections based on his failure to register in a timely fashion. That said, when and if the BMV issues the identification document to Plaintiff, the issuance shall also effectuate his registration to vote.

IT IS SO ORDERED.

Date: 10/09/2012

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

11

Copies to:

William R. Groth
FILLENWARTH DENNERLINE GROTH & TOWE LLP
wgroth@fdgtlaborlaw.com

Adam Clay
INDIANA ATTORNEY GENERAL
Adam.Clay@atg.in.gov

Betsy M. Isenberg
INDIANA OFFICE OF THE ATTORNEY GENERAL
Betsy.Isenberg@atg.in.gov

William Martain Krowl
KROWL LAW, LLC
krowllegal@gmail.com